E-filed 9/27/2016

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DARCY JAY CHRISTENSEN,

           Plaintiff,

    v.

CAROLYN W. COLVIN,

           Defendant.

Case No.15-cv-03729-HRL

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

      Claimant Darcy Christensen ("Christensen") appeals a decision of the ALJ denying social security disability benefits under Title II of the Social Security Act. He moves for summary judgment on the grounds that the ALJ improperly rejected the opinions of a treating physician and improperly discredited the claimant's testimony. The defendant filed a cross-motion for summary judgment defending the ALJ's decisions and arguing that the denial of benefits was supported by substantial evidence in the record as a whole. For the reasons explained below, the court denies Christensen's motion and affirms the Commissioner's decision.

### FACTUAL AND PROCEDURAL BACKGROUND

      Darcy Christensen was born in 1954. AR 154. He graduated from Humboldt State University with degrees in music and business administration, AR 910, and worked for about thirty years, most recently as a software engineer. AR 204. He has two adult children and a passion for music. AR 80.

      Christensen suffered a serious bout of depression in 2005 requiring hospitalization, AR 85,

United States District Court
Northern District of California

but he was able to resume working until February 2010, when the depression returned.  AR 154.

After a long period of work-related stress, Christensen says, "I . . . just broke."  AR 79.  "I came

home, I tried to log in, . . . and suddenly found myself completely at a loss of what to do. . . . And

I just couldn't function, I just couldn't do anything . . . ."  AR 79.  Christensen stopped working,

and his depression affected more than just his career: "one of my greatest loves and passions is

music . . . and [] I couldn't even look at my guitar.  I couldn't, didn't play any music."  AR 80.  He

lost his appetite, had trouble sleeping, and reports that his marriage suffered.  AR 81-82.

Christensen even contemplated suicide, but he has been able to dismiss those thoughts because of

his love for his children: "I want to see their successes and I want to see my grandchildren."  AR

84.

 Christensen was diagnosed by Dr. Tong, his primary care provider, with "anxiety, labile

mood, insomnia, [and] difficulty concentrating" in February 2010, AR 668, symptoms which

persisted through May 2011, AR 747.  His sleep specialist, Dr. Sarinas, also noted that

Christensen had "severe depression," AR 223, a conclusion echoed by Christensen's treating

psychologist, Dr. Everstine, AR 260, 296, 300, 304, 420, 947.  Dr. Everstine reported in a series of

check-box forms that Christensen showed marked limitations in understanding and memory,

marked limitations in sustained concentration and persistence, and a mix of marked and moderate

limitations for social interaction.  AR 260-61.

Christensen's treatment of these symptoms was not consistent.  Dr. Sarinas noted in

October 2010 that Christensen was not on medication, in part due to his intolerance of the side

effects.  AR 233, 369, 374, 716, 721; *see also* AR 1003 (January 2013 report from Dr. Everstine

listing no current medications).  Dr. Sarinas also stated in October 2010 that Christensen had not

been seeing a psychiatrist up to that point, AR 366, and Dr. Tong's notes in June 2012 indicate a

gap in Christensen's visits with Dr. Everstine.  AR 881.

Interspersed with Dr. Everstine's diagnoses and evaluations, the record includes more

optimistic evaluations from two agency examining physicians, Doctors Acenas and Billbrey, and

an ambiguous report from an independent evaluator, Dr. Lopez.  Dr. Acenas reported in 2011 that

Christensen was "alert, pleasant, cooperative," AR 291, and that he could "perform simple and

United States District Court
Northern District of California

repetitive tasks, as well as accept instructions from supervisors." AR 294.  Acenas concluded that Christensen could maintain a consistent job.  AR 294.  Dr. Billbrey, two years later, determined that Christensen would have "moderate difficulties" working full-time, but was optimistic about his chances of recovery with more consistent treatment.  AR 995-96.  Dr. Lopez determined that Christensen would not be able to return to work as a software engineer, AR 916-17, but noted that the results of his examination should "be interpreted with caution," because Christensen "responded to the test items in an exaggerated manner."  AR 914.

Christensen's own account is inconsistent.  He reported playing his guitar and working on personal recording projects, cooking meals, talking walks, attempting cycling, AR 219, doing chores (including grocery shopping), AR 221-22, 292, playing in a band, AR 223, and going to church, AR 223, 910.  But he also reported having trouble concentrating, AR 224, having trouble finishing chores, AR 224, forgetting appointments, AR 194, and skipping meals, AR 221.

Christensen first filed a claim for Social Security Disability benefits in June 2011.  AR 154.  This claim was denied, both initially, AR 128, and on reconsideration, AR 138.  At the subsequent hearing before the ALJ, Christensen and a medical expert, Dr. Tanenhaus, both testified.  AR 71-76, 79-88.  Dr. Tanenhaus was inclined to discount the opinions of Doctors Billbrey and Acenas and to credit Dr. Everstine's reports, but the ALJ noted that the two agency examining physicians' reports corroborated each other.  AR 76-77.  Even so, the ALJ stated that he thought Christensen would meet the listing for a disability.  AR 92.

Between the time of the hearing and the issuance of the written opinion, the ALJ changed his mind.  The ALJ's opinion finds that Christensen does not meet a listed impairment because he has only "mild limitations in activities of daily living and social functioning," rather than the moderate limitations required for a disability determination.  AR 21-22.  In making this finding, the ALJ noted that Christensen did not consistently treat his mental health condition and cited Christensen's reports that he took walks, played guitar, worked on personal recording projects, did chores, and went to church and band practices.  AR 22.  The same evidence supported the ALJ's finding that Christensen's contrary testimony was not credible.  AR 24.

In weighing the evidence from the various physicians, the ALJ declined to give controlling

weight to Dr. Everstine's reports, noting that the treating physician "has not provided any support for his findings," and that his reports were contradicted by other evidence in the record.  AR 25. The ALJ, though stating that he would give Dr. Lopez's report "equal weight" to those of Acenas and Billbrey, ultimately discounted Dr. Lopez's conclusions because he said that his results should be cautiously interpreted.  AR 26.  Finally, the ALJ rejected the conclusions of Dr. Tanenhaus, the medical expert, because his opinions were based on Dr. Everstine's opinions, which the ALJ had already discredited due to their lack of support.  AR 26.  The ALJ concluded that there were sufficient jobs in the economy that Christensen would be able to perform and issued a decision stating that he was not disabled.  AR 28-29.

In July 2015, the Appeals Council rejected Christensen's request for review, AR 1, and Christensen filed this action one month later, Dkt. No. 1.

**STANDARD OF REVIEW**

The reviewing court must affirm the Commissioner's decision if it applies the correct legal standards and is supported by substantial evidence.  *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).  Substantial evidence is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."  *Id.*  The Ninth Circuit has described substantial evidence as "more than a mere scintilla, but may be less than a preponderance."  *Id; Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012).  If the evidence is such that reversal or affirmance are both reasonable, the Court must defer to the Commissioner.  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

**DISCUSSION**

The ALJ determines eligibility for disability benefits according to the five-step process set out by 20 CFR Section 404.1520:

> The ALJ first considers whether the claimant is engaged in substantial gainful activity; if not, the ALJ asks in the second step whether the claimant has a severe impairment (i.e., one that significantly affects his or her ability to function); if so, the ALJ asks in the third step whether the claimant's condition meets or equals one of those outlined in the Listing of Impairments in Appendix 1 of the Regulations; if not, then in the fourth step

the ALJ asks whether the claimant can perform his or her past relevant work; if not, finally, the ALJ in the fifth step asks whether the claimant can perform other jobs that exist in substantial numbers in the national economy.

*Lewis v. Apfel*, 236 F.3d 503, 508 (9th Cir. 2001), citing 20 C.F.R. §§ 404.1520(b)-(f)(1).  To meet the requirements of a listed impairment—here, impairment 12.04—in step three, the claimant must have, in addition to symptoms not in dispute here, at least two of the following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.04.  The parties do not dispute that decompensation is not present here.

Christensen argues that the ALJ erred by rejecting psychiatric evidence that he met the requirements of listing 12.04.  Specifically, he asserts that an ALJ can only reject a treating physician's opinion in favor of a consulting physician's opinion if he provides specific and legitimate reasons supported by substantial evidence.  Chrstiensen argues that the ALJ here failed to provide such reasons for rejecting Dr. Everstine's opinions and for preferring the opinions of Dr. Acenas and Dr. Billbrey.  Additionally, he asserts that the ALJ misread Christensen's functional report.

The opinions of treating physicians are entitled to more weight than the opinions of examining physicians, whose opinions are entitled to more weight than those of non-examining physicians.  *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).  To reject the opinion of a treating physician that is contradicted by another doctor's opinion, the ALJ must "provid[e] specific and legitimate reasons that are supported by substantial evidence."  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (quoting *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)).  An ALJ may not ignore a treating doctor's opinion, "assert[] without explanation that another medical opinion is more persuasive," or merely reject an opinion with boilerplate criticism.  *Id.* at 1012-13.  An ALJ *may* reject check-off reports that lack "any explanation of the bases of their conclusions."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

United States District Court
Northern District of California

The ALJ provided specific, legitimate reasons supported by substantial evidence in rejecting Dr. Everstine's opinions.  First, the ALJ stated that Dr. Everstine "has not provided any support for his findings."  AR 25.  The ALJ argued that Dr. Everstine provided "no office notes or mental status observations" to support his conclusions, *id.*, an opinion that was also stated by one Dr. Frankel in the initial disability determination in 2012, AR 104, 106.  Indeed, though the record contains many reports from Dr. Everstine, it contains few of his words, and most of those it does contain are conclusory statements.  AR 260, 261-63, 296, 300, 304, 420, 1001-1003.

Second, the ALJ asserted that Dr. Everstine's opinions are contradicted by other evidence in the record, AR 26, including the opinions of Dr. Acenas and Dr. Billbrey, both of whom found fewer or less severe restrictions affecting Christensen.   For example, Dr. Billbrey stated that Christensen "is able to do most chores, can drive a car and run most errands . . . [and] is able to perform all his activities of daily living," AR 995, a statement at odds with Dr. Everstine's unexplained conclusion that Christensen is "minimally functioning on most days."  AR 1001.  Additionally, with respect to social functioning, Billbrey stated, "[Christensen] gets along well with family and friends, but has little interaction with neighbors and strangers."  AR 995.  While this latter statement does not expressly contradict Dr. Everstine's notes that Christensen "rarely interacts with close associates from the past," AR 1002, it does create a different impression of Christensen's social functioning.

The ALJ also explained that Christensen's own reports of his daily activities contradicted Dr. Everstine's accounts, AR 22, 26, but Christensen argues that the ALJ misread these reports.  The court, however, is not persuaded that the ALJ mischaracterized Christensen's functional report.  Christensen argued that his statements that he played guitar, did chores, cooked for himself, and attended church were qualified by his statements that he often skipped meals, forgot appointments, and left most household tasks unfinished.  Plaintiff relies on *Garrison v. Colvin*, where the court held that an ALJ erred by mischaracterizing the claimant's functional report.  759 F.3d 995, 1015-16 (9th Cir. 2014).  But in that case, the claimant's daily activities, which were more limited than those described by Christensen and performed "with significant assistance . . . [and] while taking frequent hours-long rests," were consistent with the impairments alleged by the

United States District Court
Northern District of California

1  claimant.  *Id.*  Here, Christensen's daily activities, even considering his qualifying remarks, are

2  inconsistent with the claimed levels of *marked* limitations in daily activities and social

3  functioning, and consistent with a less severe level of limitation.  The ALJ did not err in

4  interpreting this functional report, and his reliance on it in rejecting Dr. Everstine's opinions was

5  not in error.

6       The ALJ also provided specific, legitimate reasons for affording less weight to the

7  evidence provided by consulting physician Dr. Lopez and non-examining expert Dr. Tanenhaus.

8  The ALJ rejected Dr. Tanenhaus's opinions because they were based primarily on the unsupported

9  opinions of Dr. Everstine, whose opinions had already been rejected.  AR 26.  As for Dr. Lopez,

10  the ALJ ultimately afforded his opinion less weight than those of Acenas and Billbrey because of

11  Dr. Lopez's warning that his findings should be interpreted cautiously due to Christensen's

12  exaggerated responses to his questions.  AR 26.

13       All of these reasons constitute substantial evidence supporting the ALJ's decisions

14  affording different weight to the opinions of the various physicians involved.

15       Next, Christensen argues that the ALJ erred by failing to adequately support his finding

16  that Christensen's testimony as to the severity of his symptoms was not credible.  Christensen

17  objected to the ALJ's statements that he did not seek treatment consistently, stating that this is not

18  clear and convincing evidence supporting an adverse credibility finding where the claimant

19  testified that he could not afford his treatment.  Additionally, Christensen objects that the adverse

20  credibility finding was based on a mischaracterization of his functional report.

21       To support a finding that the claimant's testimony about the severity of his symptoms is

22  not credible, an ALJ must offer "specific, clear and convincing reasons."  *Garrison v. Colvin*, 759

23  F.3d 995, 1014-15 (9th Cir. 2014).  The ALJ may consider the claimant's inconsistent treatment as

24  a factor weighing against the claimant's credibility, *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th

25  Cir. 2012), if the failure to seek treatment or follow a course of treatment is "unexplained or

26  inadequately explained."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  But if the

27  claimant provides evidence that he did not take medication for his symptoms for a good reason—

28  including that he could not afford the medication—the ALJ should not reject the symptom

1  testimony.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

2         Christensen did not testify at the hearing that he neglected his medications because he

3  could not afford them.  Nor does the record contain other evidence suggesting this was the case.

4  Instead, Christensen testified that his visits with Dr. Everstine changed from weekly to bi-weekly

5  when he lost his insurance.  AR 88.  But the ALJ's primary objection to the consistency of

6  Christensen's treatment is not to the fact that visits went from weekly to bi-weekly, but that there

7  are periods in which the visits—and Christensen's taking his medications—seem to have stopped

8  entirely.  AR 23-26.  Though Christensen's reluctance to take medication is explained in part by

9  his intolerance of the side effects, the gaps in visits are not explained in the record, and the ALJ

10  did not err by considering them as a factor weighing against Christensen's credibility.

11         Claimant also argues that the adverse credibility finding was in error because it was based

12  on the ALJ's mischaracterization of the functional report.  As discussed above, however, the court

13  is not persuaded that the ALJ misread this report, and so the ALJ did not err by relying on it in

14  discrediting Christensen's contrary testimony about the severity of his symptoms.

15         To conclude, the ALJ's determinations that Christensen did not meet the requirements for

16  a listed disability and that he could perform work available in the economy are supported by

17  substantial evidence in the record as a whole.  Since the ALJ afforded less weight to the opinions

18  of Dr. Everstine, Dr. Lopez, and Dr. Tanenhaus and did not credit the claimant's testimony as to

19  the severity of his symptoms, he was left with the opinions of Dr. Acenas and Dr. Billbrey and

20  Christensen's own functional report.  Taken together, this evidence is sufficient relevant evidence

21  from which a reasonable person could determine that Christensen was not entitled to benefits.

22  Under these circumstances, the court must affirm the ALJ's decision.

23                                    **CONCLUSION**

24         Since the ALJ did not err in providing less weight to the opinions of the treating physicians

25  or in making an adverse credibility finding with respect to the claimant's testimony, and since the

26  ALJ's decision is supported by substantial evidence in the record as a whole, the court hereby

27  affirms the ALJ's decision.  The claimant's motion for summary judgment is denied, and the

28  defendant's cross-motion for summary judgment is granted.

United States District Court
Northern District of California

1        **IT IS SO ORDERED.**

2    Dated: 9/27/2016

3                                                    _____
                                                     HOWARD R. LLOYD
4                                                    United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California